## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

JONATHAN O. DAYE, *on behalf of himself and those similarly situated,*

        Plaintiff,

vs.

F.H. CANN & ASSOCIATES, INC., and JOHN DOES 1 to 10,

        Defendants.

Civil Action No.
2:22-cv-01024-JMV-JBC

---

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

---

Yongmoon Kim
KIM LAW FIRM LLC
411 Hackensack Avenue, Suite 701
Hackensack, New Jersey 07601
Telephone & Fax (201) 273-7117
ykim@kimlf.com
*Attorneys for Plaintiff Jonathan O. Daye*

TABLE OF CONTENTS

1.  PRELIMINARY STATEMENT ..................................................................1

2.  STATEMENT OF FACTS .....................................................................3

3.  ARGUMENT ....................................................................................4

    3.1   The Court Should Remand This Matter Back To State Court ..............4

    3.2   The Fair Debt Collection Practices Act's Policy Against Invasion of
          Privacy ........................................................................................4

    3.3   Defendant's Conduct Constitutes A Violation Pursuant To FDCPA's
          Prohibition Of Disclosures To Third Parties........................................8

    3.4   Publication Of A List Of Debtors To A Third Party Violates The
          Provisions Of 15 U.S.C. § 1692d(3). .................................................11

    3.5   Publication To One Is Publication .....................................................12

    3.6   FHCA's Interpretation Ignores The Plain Statutory Text ..................18

    3.7   Limiting Defendant's Disclosure of Private Information About
          Plaintiff Does Not Violate the First Amendment................................22

          3.7.1   The FDCPA Restriction On Speech Is Content-Neutral And
                  Subject To Intermediate Scrutiny...............................................23

          3.7.2   The FDCPA Restriction On Speech Passes Strict Scrutiny......25

    3.8   Plaintiff Has Stated A Claim For Negligence .....................................25

4.  CONCLUSION ................................................................................28

# TABLE OF AUTHORITIES

## CASES

*Bahena v. Jefferson Capital Systems, LLC*, 363 F. Supp. 3d 914 (W.D. Wis. 2019) ...............................................................................................27

*Barclift v. Keystone Credit Servs., LLC*, 2022 U.S. Dist. LEXIS 26355, 2022 WL 444267 (E.D. Pa. Feb. 14, 2022) ............................................................4

*Beaumont v. Brown*, 257 N.W.2d 522 (Mich. 1977) .................................. 14, 15, 16

*Bolick v. DFS Servs. LLC*, No. 10-cv-5211, 2011 U.S. Dist. LEXIS 105984 (E.D. Pa. Sep. 16, 2011) ................................................................13

*Brown v. Card Service Center*, 464 F.3d 450 (3d Cir. 2006) ...................................11

*Brown v. Racquet Club of Bricktown*, 95 N.J. 280, 471 A.2d 25 (1984) ...............25

*Clark v. Community for Creative Non-Violence*, 468 U.S. 288 (1984)...................24

*Crescenzo v. Crane*, 350 N.J. Super. 531 (App. Div. 2002)...................................26

*DiNaples v. MRS BPO, LLC*, 934 F.3d 275 (3d Cir. 2019).......................................5

*Douglass v. Convergent Outsourcing*, 765 F.3d 299 (3d Cir. 2014).............. 5, 9, 13

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc*., 105 S.Ct. 2939, 472 U.S. 749 (1985) ..................................................................................23

*Exxon Mobil Corp. v. Allapattah Services, Inc*., 125 S.Ct. 2611, 545 U.S. 546 (2005) ..................................................................................18

*Gagliardi v. Experian Info. Solutions, Inc.*, No. 8-892, 2009 U.S. Dist. LEXIS 10741, 2009 WL 365647 (W.D. Pa. 2009) ...........................................13

*Gburek v. Litton Loan Servicing LP*, 614 F.3d 380 (7th Cir. 2010).......................10

*Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169 (6th Cir. 2011)....................10

*Harris v. Easton Pub. Co*., 483 A.2d 1377 (Pa. Super. Ct. 1984)...........................14

*Hawley v. Prof'l Credit Bureau,* 345 Mich. 500, 76 N.W.2d 835 (1956) ..............14

*In re Nickelodeon Consumer Privacy Litigation*, 827 F.3d 262 (3d. Cir. 2016).....27

*Keith v. Truck Stops Corp. of Am*., 909 F.2d 743 (3d Cir. 1990) ...........................25

*Kett v. Comm. Credit. Plan, Inc*., 222 Wis.2d 117, 586 N.W.2d 68, 76 (Ct. App. 1998)....................................................................................................................27

*Khimmat v. Weltman, Weinberg & Reis Co., LPA*, No. 2:21-cv-02944-JDW, 2022 U.S. Dist. LEXIS 21076 (E.D. Pa. Feb. 7, 2022) ............................................1, 8

*Morales v. Healthcare Revenue Recovery Grp., LLC*, 859 F. App'x 625 (3d Cir. 2021)....................................................................................................................5

*Pagan v. Convergent Outsourcing, Inc., et al.*, 2022 U.S. Dist. LEXIS 71428 (D.N.J. Mar. 30, 2022) ...........................................................................................4

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37 (1983)...............24

*Reis Co., LPA*, No. 2:21-cv-02944-JDW, 2022 U.S. Dist. LEXIS 21076-16 (E.D.Pa. Feb. 7, 2022)............................................................................................8

*Rizzo v. Prudential Securities Inc.*, 287 N.J. Super. 523 (App. Div. 1996) ............26

*Seeger v. AFNI, Inc*., 548 F.3d 1107 (7th Cir. 2008)...............................................27

*Seeger v. AFNI, Inc.,* No. 05-c-714, 2007 WL 1598618 (E.D. Wis. June 1, 2007) 27

*Smith v. Datla*, 451 N.J. Super. 82 (App. Div. 2017) ................................. 12, 16, 25

*Vurimindi v. Fuqua Sch. of Bus*., 435 F. App'x 129 (3d Cir. 2011) ................. 13, 14

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989)...............................................24

## STATUTES

15 U.S.C. § 1681a(f) .................................................................................................6

15 U.S.C. § 1681b(3) ................................................................................................6

15 U.S.C. § 1692.......................................................................................................4

15 U.S.C. § 1692(a) ........................................................................ 11, 24

15 U.S.C. § 1692(b) ............................................................................11

15 U.S.C. § 1692b ...............................................................................5

15 U.S.C. § 1692c(b) ......................................... 1, 4, 6, 7, 18, 20, 23, 25

15 U.S.C. § 1692d(3) ...................................................................... 2, 6, 7

15 U.S.C. § 1692f(8) ............................................................................2

## OTHER AUTHORITIES

William L. Prosser, Privacy, 48 Cal. L. Rev. 383, 389 (1960)................................13

William L. Prosser, The Law of Torts § 112 (3d ed. 1964) ....................................12

## REGULATIONS

12 C.F.R. Part 1006................................................................................8

86 FR 5766.........................................................................................8

## CONSTITUTIONAL PROVISIONS

U.S. CONST. amend. I ............................................................................23

## 1.    PRELIMINARY STATEMENT

When it comes to statutes, one hopes Congress channels Dr. Seuss: "I meant what I said and I said what I meant." Dr. Seuss, Horton Hatches The Egg 21(2d ed. 1968). Unfortunately, the Mad Hatter teaches that meaning what you say and saying what you mean are "not the same thing a bit." Lewis Carroll, Alice's Adventures In Wonderland 98 (VolumeOne Publishing) (1998). And sometimes, a statute might say something that Congress did not necessarily mean. But courts have to start with the presumption that Congress meant what it said. So when a statute says something, a court must give effect to that enactment. And if it turns out that's not what Congress meant, then it will be up to Congress to fix it.

At bottom, this dispute is about whether Congress meant what it said in the Fair Debt Collection Practices Act. It used language that, on its face, bars debt collectors from communicating information about debtors to letter vendors. Defendant . . . argues that Congress could not have meant what it said and asks the Court to interpret the statute in the way that [Defendant] thinks Congress must have meant. But the Court must assume that Congress meant what it said, and it will enforce the statute that way.

*Khimmat v. Weltman, Weinberg & Reis Co., LPA*, No. 2:21-cv-02944-JDW, 2022 U.S. Dist. LEXIS 21076, at *1-2 (E.D. Pa. Feb. 7, 2022).

The text is clear. The FDCPA prohibits the disclosure of information obtained about debtors in two different and separate provisions. Title 15 U.S.C. § 1692c(b) provides the following limitation on the disclosure of a consumer's information by a debt collector:

Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt

> collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

Title 15 U.S.C. § 1692d(3) also prohibits any debt collector from:

> The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 1681a(f) or 1681b(3) of this title.

The Plaintiff has alleged the Defendant, F.H. Cann & Associates, Inc. ("FHCA"), violated each of the above provisions by providing Plaintiff's private information (along with other alleged debtors' private information) to a third party that included a list published by FHCA. Plaintiff also alleges that Defendant violated 15 U.S.C. § 1692f(8) because the Defendant's envelope showed an address that was not the address of the Defendant. See Complaint ¶¶ 33-47. The Complaint also alleges that:

> It is FHCA's policy and practice to unlawfully communicate and convey private and sensitive information about consumers with third parties by using third party vendors to send written collection communications in attempts to collect consumer debts.

Complaint ¶ 44.

FHCA does not contest these material facts in its motion. Instead, FHCA contends that the plain language of the remedial statutes should instead be ignored and sufficiently diluted to allow FHCA to share, without the mandated consent, private and sensitive information about Plaintiffs with third parties. FHCA also contends that it should also be allowed to publish lists of "debtors" to third parties. FHCA chooses to actively participate in a well-regulated industry. It wants the benefits that accrue from its commercial activities, but not the responsibilities that inexorably accompany them. FHCA moves to dismiss this action. The motion should be denied.

## 2.    STATEMENT OF FACTS

Instead of printing and mailing its own letters, when sending collection letters to collect debts, FHCA used an unregulated third-party mail vendor. Compl. ¶ 33. By doing so, FHCA communicated Mr. Daye's full name, home address, the name of the current creditor, the status of the account, FHCA's reference number, the settlement/resolution options, the name of the original creditor, the amounts of the alleged debts, the principal amounts, interest amounts, and the costs. Compl. Ex. B.

### 3.   ARGUMENT

**3.1   The Court Should Remand This Matter Back To State Court**

After *TransUnion LLC*, 141 S. Ct. 2190 (2021), district courts within the Third Circuit have concluded that the harm from the violation of the consumer's rights under § 1692c(b) when a debt collector communicates with a mail vendor is *not* a concrete harm. On March 30, 2022, in *Pagan v. Convergent Outsourcing, Inc.*, 2022 U.S. Dist. LEXIS 71428 (D.N.J. Mar. 30, 2022), Judge Arleo remanded the suit asserting a mail vendor claim after concluding the court lacked subject matter jurisdiction. Judge Arleo relied on *Barclift v. Keystone Credit Servs., LLC*, 2022 U.S. Dist. LEXIS 26355, 2022 WL 444267 (E.D. Pa. Feb. 14, 2022) which also found jurisdiction lacking to adjudicate the mail vendor claim. Plaintiff will be moving to remand this matter back to state court.

**3.2   The Fair Debt Collection Practices Act's Policy Against Invasion of Privacy**

The provisions of the FDCPA impose strict liability to address the abusive practices identified by Congress that include the "invasion of individual privacy." 15 U.S.C. § 1692. The Third Circuit has uniformly and strictly applied the limits on disclosure of personal information of debtors, whether they owed a debt or not. *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303-04 (3d Cir. 2014), held the inclusion of a debt collector's account number on an envelope was not

permissible and violated the FDCPA, despite claims that unconsented-to disclosures of personal information to letter vendors is standard industry practice—a similar theme raised by FHCA's assertions.

*Douglass* was followed by the decision in *DiNaples v. MRS BPO, LLC*, 934 F.3d 275 (3d Cir. 2019), which again held that disclosure of an account number, this time available through a visible QR code, violated the FDCPA. More recently, the Third Circuit held in *Morales v. Healthcare Revenue Recovery Grp., LLC*, 859 F. App'x 625 (3d Cir. 2021) that an internal reference number disclosure through a barcode visible on an envelope supported a FDCPA claim.

Consistent with this line of cases by the Third Circuit, Mr. Daye has brought a complaint against FHCA because of FHCA's reckless disclosure of his private information to unregulated third parties and the provision by FHCA of a list of debtors (including Mr. Daye) in violation of two separate prohibitions under the FDCPA.

Title 15 U.S.C. § 1692c(b) provides the following limitation on the disclosure of a consumer's information by a debt collector:

> Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a post-judgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if

otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

Title 15 U.S.C. § 1692d(3) also prohibits any debt collector from:

> The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 1681a(f) or 1681b(3) of this title.

Plaintiff has alleged that FHCA violated each of the above provisions by providing private information (along with other alleged debtors) to a third party including a list of debtors. See Complaint ¶¶ 33-47. The Complaint also alleges that:

> 44.   It is FHCA's policy and practice to unlawfully communicate and convey private and sensitive information about consumers with third parties by using third party vendors to send written collection communications in attempts to collect consumer debts.
>
> 45.   Upon information and belief, FHCA published a list of debtors, including Plaintiff, that allegedly refuse to pay debts.

Complaint ¶¶ 44-45.

FHCA does not contest these material facts in its motion. FHCA's ultimate contention is that the plain language of the remedial statute, § 1692c(b), should be ignored and, instead, sufficiently diluted to allow FHCA to share Mr. Daye's private and sensitive information with unregulated third parties without his consent. FHCA also contends that it should also be allowed to publish lists of

"debtors" to third parties because it wants to use unregulated third parties to conduct its collection operations with less overhead. FHCA's position appears to be that clear statutes that identify who debt collectors may disclose information to, should be rewritten to only prohibit communications to "friends, co-workers, friends, etc." FHCA's Mem. at 7, 26, 38, 58, ECF No. 5-1. The statute identifies the specific parties that debt collectors may properly communicate debtor information to. § 1692c(b). The specific listing avoids any gray area as to whom communications are allowed that Defendant suggest exists. The Defendant seeks a gray area since it communicated with persons whom the FDCPA did not authorize. Similarly, the words used by Congress when it enacted FDCPA's prohibition on distributing a list of debtors leaves no room for exceptions. § 1692d(3). FHCA chose to participate in a regulated industry; the rules and limitations on debt collectors set forth in the FDCPA are clear and unambiguous. FHCA simply wants the benefits that accrue from its collection activities but not the responsibilities that accompany it.

FHCA moves to dismiss Mr. Daye's Complaint, asking the Court to hold, contrary to the words used by Congress and the Third Circuit's continuous strict construction and application of the privacy restrictions of the FDCPA, that an exception to the restrictions imposed by the FDCPA on FHCA's use of Mr. Daye's private information exists for no reason other than the fact that FHCA chose to

violate a provision of the FDCPA. The statutory language is clear and should be enforced. Plaintiff respectfully requests that FHCA's motion be denied.

### 3.3    Defendant's Conduct Constitutes A Violation Pursuant To FDCPA's Prohibition Of Disclosures To Third Parties

FHCA contends that its practice of disclosing sensitive information and lists of consumers to third party vendors has been tacitly approved by the Consumer Financial Protection Bureau ("CFPB"); however, despite their contrary statements, FHCA does not offer a single authority that explicitly states or promulgates that approval. FHCA cites an amendment to Regulation F, 12 C.F.R. Part 1006 that states, in part, "The Bureau understands from its outreach that many covered persons currently use vendors . . . . " (86 FR 5766, 5845). To be clear, this is a mere acknowledgment of the use of vendors in the debt collection process. It is not an explicit ratification as defense counsel has argued. In addition to citing Regulation F out of proper context, defense counsel affords too much deference to the reasoning behind an agency's adoption of a regulation. *See Khimmat v. Weltman, Weinberg & Reis Co., LPA*, No. 2:21-cv-02944-JDW, 2022 U.S. Dist. LEXIS 21076, at *14-16 (E.D.Pa. Feb. 7, 2022) ("Consequently, because the agencies tasked with regulating and enforcing the FDCPA have not addressed the use of letter vendors by debt collectors in any legally significant way, and because the statutory language is not subject to a different reading, the Court will afford no deference to the indeterminate actions of the CFPB and FTC.").

When the improper practices addressed here have been raised, the Third Circuit has found that their disclosures violate the FDCPA and found consumers to have suffered actual injury for the invasions of privacy which meets Article III standing.

*Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303-04 (3d Cir. 2014) held the inclusion of a debt collector's account number on an envelope was not permissible although this industry practice has been around for decades. Plaintiff here has alleged that private and sensitive information was shared by the Defendant with third parties.

FHCA offers a variety of arguments as to why it cannot be held accountable for its disclosure of private information and distribution of lists of debtors, but none that withstand analysis. Firstly, FHCA argues that the communications of debtor information to third parties done for the purpose of sending demand letters to debtors are not communications in connection with the collection of a debt. It is reasonable to infer that when FHCA sent the information to third parties it was not seeking to collect the debt from those third parties, but the simplistic approach by FHCA that resolves the issue ignores the case law that finds that "communications in connection with collection of a debt" are broader than FHCA's hyper literal interpretation suggests.

In *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011), the Court held "[t]he text of § 1692e makes clear that, to be actionable, a communication need not itself be a collection attempt; it need only be "connect[ed]" with one." This principle makes logical sense and places import on the words chose by Congress, the seminal legislative body, rather than giving undue deference to comments of administrative agencies. If Congress had wanted the narrow view suggested by FHCA, it could have simply included communications to collect a debt in its legislation and omitted the words "in connection." In *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 386 (7th Cir. 2010), the Court examined different communications made by a debt collector, including communications with a third party wherein information about the debtor was sought, and determined the latter to be a communication in connection with collection of a debt.

FHCA warns of detrimental policy implications stemming from the disallowance of letter vendors as a protection against the dissemination of consumers' personal information, such as debt-collectors being forced to insource previously outsourced services. This is unacceptable to the Defense because insourcing in the name of data security is, apparently, not cost-efficient. However, that position fails in understanding and acknowledging the abusive practices that

Page **10** of **29**

motived the policy-turned-law codified at 15 USC § 1692d(3). The Motion to

Dismiss should be denied.

### 3.4  Publication Of A List Of Debtors To A Third Party Violates The Provisions Of 15 U.S.C. § 1692d(3).

In enacting the FDCPA, Congress found that *"[a]busive debt collection*

*practices contribute* to the number of personal bankruptcies, to marital instability,

to the loss of jobs, and *to invasions of individual privacy*." 15 U.S.C. § 1692(a)

(emphasis added). Congress also found that "[e]xisting laws and procedures for

redressing these injuries are inadequate to protect consumers." 15 U.S.C. §

1692(b). FHCA asks that the Court construe the prohibition on the publication of a

list of debtors in such a manner that the publication is only violative if the

publication is widespread. First, such a narrow interpretation of this set of

protections set forth in a remedial statute contravenes the basic canon that remedial

statutes are to be liberally and broadly construed to effectuate their purpose. *Brown*

*v. Card Service Center*, 464 F.3d 450, 453 (3d Cir. 2006). A single publication of

the list can and does violate the prohibition. There is nothing in the text of the

statute that supports FHCA's argument that the publication must be widespread

before it violates the prohibition. FHCA's contention that the use of the word

"publication" denotes that an invasion of privacy is only harmful to an individual if

it widespread is not consistent with the findings of Congress, the purpose of the

law, or common sense. The extent to which FHCA seeks to use "existing law" to

limit the scope of the FDCPA ignores Congress's purpose in enacting the FDCPA—to overcome the inadequacy of existing law. In the end, the "publication of a list of debtors" to a single person invades the privacy of debtors protected by the FDCPA.

Secondly, FHCA presumes that, because the publication was made to one company, the single entity counts as a single person. There is nothing before the Court concerning the size of the company that FHCA communicated with regarding the addressees of collection letters. There is nothing before the Court to discern exactly how many individuals were privy to private information about the Plaintiff and others similarly situated or to elaborate on the list of debtors. Further, even if the Court were to engage in speculation, the distribution of a list of debtors to a single person invades the privacy of debtors seeking protection under the FDCPA.

## 3.5  Publication To One Is Publication

Invasion of privacy is not one tort but four distinct torts that "have almost nothing in common except that each represents an interference with the right of the plaintiff to 'be left alone.'" *Smith v. Datla*, 451 N.J. Super. 82, 95 (App. Div. 2017) (quoting William L. Prosser, The Law of Torts § 112 (3d ed. 1964)). The four invasion of privacy torts "'may be subject, in some respects at least, to different rules; and that when what is said as to any one of them is carried over to another, it

may not be at all applicable, and confusion may follow.'" *Id*. at 96 (quoting William L. Prosser, Privacy, 48 Cal. L. Rev. 383, 389 (1960)). We discuss the improper publication of private facts.

FHCA tries to dismiss the unconsented-to disclosure of account information as inconsequential, claiming it does not rise to the level of other improper disclosures of private facts, but contrary to FHCA's valuation, the Third Circuit has consistently recognized that exposure of consumers' account information is "a core concern animating the FDCPA—the invasion of privacy." *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014).

FHCA also contends that a single publication of private facts does and should not trigger the mandated protection for private facts. Defendant asserts that publication to one person or even to a small group of persons is not enough. Plaintiff disagrees. *Bolick v. DFS Servs. LLC*, No. 10-cv-5211, 2011 U.S. Dist. LEXIS 105984 (E.D. Pa. Sep. 16, 2011), is a case in which the court dismissed a pro se plaintiff's two invasion of privacy claims—public disclosure of embarrassing facts and publicity placing him in a false light—while relying on, in footnote 24, *Vurimindi v. Fuqua Sch. of Bus*., 435 F. App'x 129 (3d Cir. 2011) and *Gagliardi v. Experian Info. Solutions, Inc.*, No. 8-892, 2009 U.S. Dist. LEXIS 10741, 2009 WL 365647 (W.D. Pa. 2009). Although *Gagliardi* is not particularly helpful, *Vurimindi* does not support the dismissal.

Although *Vurimindi* dismissed the publication of private facts under North Carolina law, it did so because North Carolina does not recognize this tort. *Vurimindi*, 435 F. App'x 129 at 136. And, while engaging in the conflict of law analysis (whether to apply Pennsylvania or North Carolina law), *Vurimindi* found sufficient publication under Pennsylvania at the pleading stage where "Vurimindi alleged that Duke disseminated information to the 'student body' and businesses near campus . . . ." *Id*. at 135. While doing so, *Vurimindi* cited to *Harris v. Easton Pub. Co*., 483 A.2d 1377, 1385-86 (Pa. Super. Ct. 1984), which concluded that communication to a group of 17 persons constituted publicity as a matter of law.

Thus, the courts in *Vurimindi* and *Harris* recognize that publication under Pennsylvania law can be to a small group of persons. Here, Defendant's letter vendor may include tens if not hundreds of individuals. Therefore, dismissal at this stage of the case would be premature and inappropriate.

In *Beaumont v. Brown*, 257 N.W.2d 522 (Mich. 1977), the Michigan Supreme Court stated,

> We believe the Court of Appeals language is unduly restrictive. Both the language of the majority and minority in *Hawley*, 345 Mich 500, voice a more liberal standard; "unnecessary publicity" does not call to mind the necessity of publication to everyone and there certainly can be "unreasonable and serious interference" with one's privacy without everyone being informed. This raises a question as to the Court of Appeals language "communication * * * to the public in general or * * * to a large number of

Page **14** of 29

people" or "communication to the general public as opposed to a few".

To begin with "communication to the general public" is somewhat ambiguous, because a communication rarely, if ever, reaches everyone. It is therefore in order to consider the significance of communicating to the public. Communication of embarrassing facts about an individual to a public not concerned with that individual and with whom the individual is not concerned obviously is not a "serious interference" with plaintiff's right to privacy, although it might be "unnecessary" or "unreasonable". An invasion of a plaintiff's right to privacy is important if it exposes private facts to a public whose knowledge of those facts would be embarrassing to the plaintiff. Such a public might be the general public, if the person were a public figure, or a particular public such as fellow employees, club members, church members, family, or neighbors, if the person were not a public figure.

Here we have developed the criterion of a particular public, whose knowledge of the private facts would be embarrassing to the plaintiff, and this criterion is not consonant with the two generalizations of the Court of Appeals. As Justice Smith said, we do not engage in a numbers game and therefore we leave the criterion here announced to be illustrated by this and future cases.

*Beaumont v. Brown*, 257 N.W.2d 522, 531 (Mich. 1977).

Thus, the alleged offending letter containing embarrassing private facts sent to an important Army official was sufficient to meet the publication requirements since it would "have to officially pass through many hands and unofficially pass through many more." *Beaumont* held "that such allegations of publication were sufficient allegations of 'unnecessary publicity' and 'unreasonable and serious

interference' with plaintiff's right to privacy to allow the case to go to the jury." *Id.*

at 531-32.

     *Beaumont* also quotes Justice Talbot Smith's dissent, which emphasizes that

the tort in question has, as its central concern, the *privacy* of the individual and that

"publication of the embarrassing facts to only one person alone was unlawful

publication."

> The common denominator in all of these cases is an
> unreasonable and serious interference with the plaintiff's
> interest in not having his affairs known to others. 4
> Restatement, Torts, § 867. The wrong depends not upon
> conduct otherwise tortious (i.e., trespass, defamation) nor
> does it turn upon breach of confidence, or truth or untruths,
> or an arithmetical measure of the numbers who witnessed
> the exposure, or the particular method thereof, whether by
> placard [citations omitted] or by letter [citations omitted].
> The wrong is done when the curtain of privacy is lifted.
> [Hawley v Professional Credit Bureau, Inc, 345 Mich 500,
> 514 (1956).]

*Beaumont v. Brown*, 257 N.W.2d at 529.

     Echoing the holding in *Beaumont* is the earlier-cited *Smith v. Datla,* 451 N.J.

Super. 82 (App. Div. 2017). The publication of private facts in *Datla* occurred,

"During an emergent bedside consultation in plaintiff's private hospital room . . .

Dr. Datla discussed with plaintiff his medical condition. While doing so, Dr. Datla

disclosed plaintiff's HIV-positive status in the presence of an unidentified third

party who was also in the room. Plaintiff claim[ed] that Dr. Datla thereby revealed

his HIV-positive status to the third party without his consent." *Id*. at 89. While the

Appellate Division only addressed which statute of limitations to apply to the improper disclosure of private facts, the trial court granted summary judgment in favor of the plaintiff for the disclosure of private medical information by the doctor to one individual third party. See the Order granting partial summary judgment in *Smith v. Datla*, MER-L-1527-15 (N.J. Super. Law Div. Feb. 7, 2019) attached as Exhibit A to the Kim Decl. Thus, Plaintiff respectfully submits that dismissal of this case is premature as this is an issue that should go before the jury.

FHCA also claims that the decision in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) ultimately decides this issue for purposes of the FDCPA, rendering letter vendor publication claims unactionable. *Ramirez* did not address the FDCPA or any of its provisions, an important distinction that FHCA fails to mention. It was a case under the Fair Credit Reporting Act. The footnote reference relied on by FHCA relates to a common law claim of defamation and a standing issue for such claims—neither the FDCPA nor the issue of invasion of privacy were analyzed. *Id.* at 2210 n.6. ("In short, the plaintiffs' internal publication theory circumvents a fundamental requirement of an ordinary defamation claim—publication—and does not bear a sufficiently "close relationship" to the traditional defamation tort to qualify for Article III standing.") This does nothing more than add support to Congress's finding that the existing laws did not adequately protect debtors from *invasions of individual privacy* and the FDCPA was enacted to

overcome those shortcomings. That is precisely what the provisions of § 1692c(b) and § 1692d(3) do—they make it unlawful to provide this sensitive information to third parties notwithstanding whether this type of disclosure was previously or is currently allowed by common law.

### 3.6   FHCA's Interpretation Ignores The Plain Statutory Text

> As we have repeatedly held, the authoritative statement is the statutory text, not the legislative history or any other extrinsic material. Extrinsic materials have a role in statutory interpretation only to the extent they shed a reliable light on the enacting Legislature's understanding of otherwise ambiguous terms. Not all extrinsic materials are reliable sources of insight into legislative understandings, however, and legislative history in particular is vulnerable to two serious criticisms.

*Exxon Mobil Corp. v. Allapattah Services, Inc*., 125 S.Ct. 2611, 2626, 545 U.S. 546, 568 (2005).

Despite this direction, FHCA does not suggest that the statutory text is ambiguous, but instead argues that a black letter reading of the statutory provisions is overly myopic. FHCA contends that Plaintiff's interpretation fails because it ostensibly ignores the purpose behind the provision, reads common law agency principles out of the FDCPA, disregards the interpretations of the FTC and CFPB, and would lead to absurd results due to the arguable notion that de minimis disclosures to mailing vendors are a vital aspect of a debt collector's cost-efficiency. Noticeably absent from FHCA's effort to interpret the statutory

provisions is the most basic and controlling canon of statutory construction—the weight afforded to the actual text of the statutes. FHCA goes on to essentially accuse plaintiffs seeking remedy for the unlawful disclosure of their private financial information of being little more than grifters – asserting that these aggrieved individuals can reap the vast rewards for transmissions of information that neither they, nor any other individual, know anything about. This position is nonsensical given the facts of this case.

Further, FHCA's letter vendor was certainly aware of the transmission of Mr. Daye's personal information as the collection letter was mailed to Mr. Daye's home address.

If the Court were to entertain FHCA's effort to interpret the statutory provisions without giving proper weight to the statutory text, FHCA's arguments would amount to nothing more than a biased position that supports its effort to avoid explicit limitations in the name of cost-efficiency. As noted, Congress found that improper debt collection led to invasions of individual privacy. And, additionally, that the FDCPA was necessary because existing law was inadequate. Yet, FHCA argues that the interpretation of the FDCPA based on the language legislated by Congress is overly literal, going as far arguing that, "any person does not mean literally 'any person.'" See FHCA's Mem. at 30, ECF No. 5-1. In actuality, "any person" does, in fact, mean any person other than the statutory

carveouts provided for consumers, their attorneys, consumer reporting agencies, and, if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector. 15 U.S.C. § 1692c(b). FHCA is well-aware of these exceptions. If the Court were to be influenced by FHCA's assertion that we should view the statutory language through the lens of legislative intent and promulgated purpose, Congress has already explained that the very purpose of the enaction of the FDCPA was because then-existing laws were inadequate to protect consumers. It's clear rationale that, given the aforementioned sentiment, Congress wanted to enhance consumer protections, not lessen them through inventive interpretations.

FHCA also claims that the purpose of the law was limited, aimed at preventing disclosure of private information to friends, neighbors, or employers, as though disclosure of private information to strangers is completely inconsequential. Undoubtedly, even construing the FDCPA as liberally as FHCA has, disclosure of private facts to strangers is no less an invasion of one's privacy than the disclosure of private facts to an aggrieved individual's friends or employer.

FHCA also claims that the interpretation rejects common law on agency. But, as articulated by Congress, the existing laws were inadequate to address its concerns regarding consumer protection. Therefore, a rejection of agency law does not mandate that the Court ignore the words of the statute. If Congress wanted to

further limit the use of agents in handling private information or identifying debtors, it was free to legislate that language, but Congress chose not to do so. FHCA has not provided any authority supporting the proposition that Congress could not choose to do so.

FHCA's citation to the decision in *Barbato v. Greystone Alliance, LLC*, 916 F.3d 260, 269 (3d Cir. 2019) does not strengthen their position. In *Barbato*, the Court held that an entity could not evade liability because it hired others to take collection actions. This holding is not tantamount to tacit approval of the use of agents over express statutory limits on disclosing information. Plaintiff agrees that a debt collector is liable for the actions of its agents and employees, but that is not at issue here.

FHCA also claims that the interpretation of the words of the statute should be ignored because administrative agencies disagree on their plain meaning. FHCA's arguments seek to extrapolate jurisprudential authority from agency conclusions that did not directly address the issue at bar here. There is nothing offered that directly addresses the provisions of the two statutes at issue here. And there is nothing in the text of the statutes that requires this Court to seek agency interpretations of plainly worded statutes.

FHCA's last argument, extraneous to the wording of the statute, is to claim that the interpretation asserted by the Plaintiff would lead to absurd results. FHCA

may not like the fact that Congress limited its ability to outsource its labor, but it does not present any authority that says Congress may not do so. The fact that there may be other laws that also seek to safeguard information neither impliedly repeals these laws, nor does the lack of enforcement by an agency negate statutory provisions.

Here, the words of the statute control and the black letter language should be given deference. FHCA neither contests the statutory language, nor can it overcome the plain language that prohibits it from disclosing private information or lists of debtors to third parties without consumer consent. FHCA's motion must be denied.

### 3.7   Limiting Defendant's Disclosure of Private Information About Plaintiff Does Not Violate the First Amendment

FHCA tries to drape their improper disclosures of private sensitive information as something that runs contrary to its right to free speech. FHCA's argument fails since the only speech being restricted is the dissemination of a consumer's private and sensitive information that identifies Plaintiff and others as debtors being pursued by a collection agency. There is no claim that its actions were to address any matter of public concern. It is strictly a private issue. The Supreme Court has noted "[w]e have long recognized that not all speech is of equal First Amendment importance. It is speech on 'matters of public concern' that is 'at the heart of the First Amendment's protection.'" *Dun & Bradstreet, Inc. v.*

*Greenmoss Builders, Inc*., 105 S.Ct. 2939, 2944–45, 472 U.S. 749, 758–59 (1985). The limitation on providing someone else's private information, as alleged by Plaintiff, does not rise to any measurable level of first amendment importance that stops Congress from imposing restrictions on publishing private and sensitive information by debt collectors. Employing Defendant's logic as stated, "[a] debt collector can communicate with a consumer about almost any topic and not run afoul of § 1692c(b)—that is, unless it is "a communication in connection with the collection of any debt." See FHCA's Mem. at 36, ECF No. 5-1. Although Defendant makes the aforementioned statement cynically, they have accidentally arrived at the correct answer. Restrictions on communications in connection with a debt are an unconstitutional restriction on debt collectors' free speech insofar as HIPAA Privacy Rules are an unconstitutional restriction on medical providers' free speech.

### 3.7.1  *The FDCPA Restriction On Speech Is Content-Neutral And Subject To Intermediate Scrutiny*

The First Amendment of the United States Constitution is, perhaps more than any other protective regulation, the embodiment of American ideals. It serves as the basis for personal freedoms that support all Americans' most prized liberties, such as freedom of religion, freedom of the press, freedom of assembly, and freedom to petition the Government for redress of grievances. U.S. CONST. amend. I. However, protected free speech is still subject to regulation, the scrutiny of

which is determined by the nature of the regulation itself. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983) The Supreme Court has held that "even in a public forum the government may impose reasonable restrictions on the time, place, or manner of protected speech . . . ." when the restriction is content-neutral and passes the test of intermediate scrutiny. *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). To pass the test of intermediate scrutiny, the statute must be narrowly tailored and serve an important or significant government interest. The restriction must also leave open alternative possibilities for communication. *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293 (1984); *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. at 45.

In the case at bar, all of the prongs for the test of intermediate scrutiny were met; the restriction was content-neutral and sufficiently tailored as it allowed for alternative means of communication and did not universally restrict the content of the communication; the content in question is still able to be communicated under the FDCPA restrictions. Additionally, the espoused interest of the restrictions under the FDCPA were to curb the abusive debt-collection practices that contribute to personal bankruptcies, marital instability, the loss of jobs, and invasions of privacy. 15 U.S.C. § 1692(a), which, by Congress's own admission, are compelling governmental interests.

### 3.7.2  The FDCPA Restriction On Speech Passes Strict Scrutiny

Even if the place and manner restrictions were erroneously interpreted to be content-based and the heightened standard of strict scrutiny were applied, meaning that the statute must be sufficiently narrowly tailored and serve a compelling governmental purpose in order to be found constitutionally valid, the statute would still pass the test. As mentioned above, curbing abusive debt-collection practices in the name of lessening bankruptcies, marital instability, job loss, and invasions of privacy constitutes a compelling governmental interest. The alternative channels, through which communication about a debtor's private sensitive information is allowed, include several options by which to communicate sensitive information. FHCA is free to relay debtor's sensitive financial information to consumers, their attorneys, consumer reporting agencies, and, if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector. 15 U.S.C. § 1692c(b).

## 3.8  Plaintiff Has Stated A Claim For Negligence

Plaintiff has alleged "that defendant breached a duty of reasonable care, which constituted a proximate cause of [his] injuries." *Brown v. Racquet Club of Bricktown*, 95 N.J. 280, 471 A.2d 25, 29 (1984). *Keith v. Truck Stops Corp. of Am.*, 909 F.2d 743, 745 (3d Cir. 1990). In discussing HIPAA, *Smith v. Datla*, 451 N.J. Super 82, 96-99 (App Div. 2017), held that "[t]he breach of a physician's duty to

maintain the confidentiality of his patient's medical records is a deviation from the standard of care, giving rise to a . . . claim based upon negligence." The same reasoning applies here. FHCA had a duty to maintain Plaintiff's confidential information and to not communicate it to third parties. FHCA breached that duty. Under *Smith v. Datla*, Plaintiff should be permitted to pursue their common law claims.

There are other examples in New Jersey state court. In *Crescenzo v. Crane*, 350 N.J. Super. 531, 533-34 (App. Div. 2002), an attorney issued a subpoena without complying with state court rules. As a result, a doctor improperly responded to the subpoena and forwarded privileged records of his patient. The Appellate Division held that a tort action by an injured party (the patient) will lie against the adverse attorney who obtained the party's medical records in violation of the state court rule, as well as against the doctor who provided them to the attorney without the patient's authorization. *Id.* at 542.

Another example is *Rizzo v. Prudential Securities Inc.*, 287 N.J. Super. 523 (App. Div. 1996), a tort action against a securities firm disclosing a customer's confidential account information.

FHCA complains that it does not understand the compensable loss that arises from an improper disclosure of private information. As the Third Circuit has explained:

> The purported injury here is clearly particularized, as each plaintiff complains about the disclosure of information relating to his or her online behavior. While perhaps "intangible," the harm is also concrete in the sense that it involves a clear de facto injury, *i.e.*, the unlawful disclosure of legally protected information.

*In re Nickelodeon Consumer Privacy Litigation*, 827 F.3d 262, 274 (3d. Cir. 2016). The loss of privacy rights that FHCA is dismissive of is a de facto injury, as the Third Circuit held.

FHCA's duty arises from the statutory prohibitions against disclosure. In *Bahena v. Jefferson Capital Systems, LLC*, 363 F. Supp. 3d 914, 925 (W.D. Wis. 2019) the Court refused to dismiss a negligence claim against a collector based on a duty imposed by a statute because:

> [T]he language of the statute evokes negligence and suggests that debt collectors owe a basic duty of care to the debtors they pursue. *See Seeger v. AFNI, Inc*., 548 F.3d 1107, 1115 (7th Cir. 2008) (interpreting "reason to know" in § 427.104(1)(j) as "should have known"). This encompasses a general duty to know the law and to avoid violating it. *See, e.g., Seeger v. AFNI, Inc.,* No. 05-c-714, 2007 WL 1598618, at *24, *26 (E.D. Wis. June 1, 2007) ("[A]t issue is whether AFNI knew or should have known that it did not have the right to seek this collection fee. Under the WCA, the creditor has the duty to avoid mistakes of law." (citing *Kett v. Comm. Credit. Plan, Inc*., 222 Wis.2d 117, 586 N.W.2d 68, 76 (Ct. App. 1998).).), *aff'd*, 548 F.3d 1107 (7th Cir. 2008).

Unlike a general reference to wrongful collection actions, the Plaintiff bases the negligence claim on a specific duty to not disclose private information. As

noted above, in enacting the FDCPA, Congress found that debt collection could result in "invasions of individual privacy." 15 U.S.C. § 1692(a). For this reason, the decisions cited by FHCA are not controlling in this matter.

### 4.    CONCLUSION

Defendant's motion contends the law provides no relief to consumers when a debt collector chooses to communicate private information about them to unregulated third parties. Defendant is mistaken and its motion should be denied.

Many debt collectors print and mail their own letters. But Defendant must have viewed the benefits from using a third-party service provider as so attractive that it was willing to incur the cost—including the cost of ignoring its duties to protect consumers' privacy and keep their reputations out of harm's way. Defendant did so in direct violation of two different provisions of the FDCPA.

Defendant unlawfully communicated private information about Plaintiff and his alleged debt to an unidentified third-party letter vendor. Plaintiff has no rights against that third-party to protect himself from its use or disclosure of that information. Instead, the law imposes duties on Defendant to protect Plaintiff's private information. But, for its own convenience, Defendant breached those duties.

Therefore, for the foregoing reasons, Plaintiff requests that Defendant's Motion to Dismiss be denied.

Dated: May 2, 2022                    KIM LAW FIRM LLC

                                        *s/Yongmoon Kim*
                                        Yongmoon Kim

                                        *Attorneys for Plaintiff*